## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIELLE SMITH,

      Plaintiff,

          v.

UNITED STATES DEPARTMENT
OF JUSTICE,

      Defendant.

Case No.: 8:21-cv-01291-SDM-AEP

## DEFENDANT'S SECOND RENEWED
## MOTION FOR SUMMARY JUDGMENT

Defendant respectfully submits this second renewed motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 56, and, in support of this motion, defendant states as follows:

## MEMORANDUM IN SUPPORT

### I.    PRODUCTION OF DOCUMENTS

The undersigned stated to the Court during the Status Conference on Tuesday, January 16, 2024 that defendant plans to produce additional documents. However, that is not accurate. Defendant agency has produced all documents responsive to plaintiff's FOIA requests, and the only remaining issue to be decided is whether the parties can reach a settlement of the case or if the case needs to be litigated further. The misstatement was made because the undersigned had also been preparing for an

in-person case management status conference in another FOIA case scheduled for

Wednesday, January 17, 2024.  In that case, the parties are attempting to resolve a

discrepancy in the number of documents produced by defendant and received by

plaintiff. The undersigned apologizes for the misstatement.  And, the agency in this

case states that it has produced all responsive documents.

## II.   SUMMARY OF ARGUMENTS IN FAVOR OF THE MOTION FOR SECOND AMENDED SUMMARY JUDGMENT

If a federal defendant agency seeks to withhold documents in a Freedom of

Information Act ("FOIA") case pursuant to Exemption 7(A), the agency must first

establish that the documents were collected for a law enforcement purpose. *See*

*Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2005 WL 3276222, *1, *4

(D.D.C. Aug. 16, 2005) ("An agency must prove that the withheld records were

compiled for law enforcement purposes 'before [withholding] requested documents

on the basis of any of [Exemption 7(A)'s] subparts.'") (quoting *Pratt v. Webster*,

673 F.2d 408, 416 (D.C. Cir. 1982)).  All the documents in this case were either

created or collected by a federal law enforcement agency (*i.e.*, the Federal Bureau of

Investigation ("FBI")). *See* Third Declaration of Michael G. Seidel in Support of

Defendant's Renewed Motion for Summary Judgment, attached hereto as Exhibit

("Exh.") A, ¶ 5.

The next step is to analyze whether the documents at issue were created and

collected to support the investigation and prosecution of an ongoing criminal case.

The withheld documents involved here were used to prosecute a serious federal

crime involving the production and possession of child pornography by Zackary Ellis Sanders ("Sanders"), as well as other persons.  Therefore, the documents are involved in ongoing law enforcement proceedings.  *See* Exh. A, ¶ 4.

The last step for the FBI to determine is whether a premature release of these documents "could reasonably be expected to interfere with enforcement proceedings . . . ."  5 U.S.C. § 552(b)(7)(A). After reviewing the documents, the FBI has determined that the release of these records would reasonably be expected to interfere with these legal proceedings "because every record contains protected information concerning subjects, suspects, or other individuals of potential investigative interest."  *See* Exh. A, ¶ 4.  Accordingly, all three elements have been satisfied and the documents therefore fall under Exemption 7(A), as discussed in detail below.

## III.   ARGUMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Rule"), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), and a motion for summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). A plaintiff will not survive a motion for summary judgment merely by showing a factual dispute

3

between the parties. Instead, a plaintiff must show that the dispute is "both genuine and material," that the dispute would "affect the outcome of the suit under the governing law," and that "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The federal agency has the burden of proving that it has applied the Exemption properly, *see Miccosukee*, 516 F.3d at 1258; *Ely v. Federal Bureau of Investigation*, 781 F.2d 1487, 1489-90 (11th Cir. 1986), and the Court must view the facts in the light most favorable to non-movants. *See Mudd v. United States Army*, 2007 WL 4358262, *1, *4 (M.D. Fla. Dec. 10, 2007) (citation omitted). As for the federal agency, it may meet its summary judgment burden by submitting "declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption . . . ." *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2nd Cir. 1994).  "Affidavits submitted by an agency 'are accorded a presumption of good faith,'" *id.* (citation omitted); *Florida Immigrant Advocacy Center v. National Sec. Agency*, 380 F. Supp.2d 1332, 1343 (S.D. Fla. 2005), and the decision of an agency "is entitled to deference." *Bilderbeek v. United States Dept. of Justice*, 2010 WL 1049618, *1, *3 (M.D. Fla. Mar. 22, 2010) (citing *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

4

## IV.    FOIA EXEMPTION 7(A) APPLIES TO THE DOCUMENTS HERE

As the Court knows, Mr. Michael G. Seidel is the Section Chief of the

Record/Information Dissemination Section (RIDS), Information Management

Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia, and he

is aware of the FBI's handling of plaintiff's FOIA request relating to Sanders, the IP

address 98.169.118.39, and the phrase "Hurtcore."  *See* Exh. A, ¶¶ 1-2.

Mr. Seidel submitted his declaration in response to the Court's Order dated

May 10, 2023, in which the Court denied defendants amended motion for summary

judgment.  In this Order, the Court notified defendant that "DOJ must prove only

that the information-exchange sub-category adequately invokes categorical

withholding under Exemption." May 10, 2023 Order, (Doc. 34), p. 4.

Based on the Court's two Orders denying defendant's two prior motions for

summary judgment, defendant has now eliminated the sub-category "Exchange of

Information between Various Law Enforcement Agencies." Exh. A, ¶ 3.  Instead,

after further review of the documents, Mr. Seidel explains that the documents that

were originally placed under that sub-category have now been placed under the

following functional sub-categories: "Reporting Communications",

"Administrative Instructions," and "Information Concerning Physical and

Documentary Evidence."  *See* Exh. A, ¶ 4.  The FBI also determined that the

premature release of these documents would reasonably be expected to interfere

with law enforcement proceedings because they contain information that includes

"subjects, suspects, or the names of other individuals of potential investigative

interest." *Id*.

The documents that have been reclassified "include witness statements, administrative directions, and evidentiary materials," and they fall under the Administrative and Evidentiary/Investigative categories, which were described in Mr. Seidel's First Declaration. ⁋ 40." Exh. A, ¶ 5. The documents comprise electronic communications (ECs), law enforcement investigative reports (Reports), and Letterhead Memorandums (LHMs), and they fall under the functional category "Administrative Materials." *See id*. In particular, EC and LHM documents "fall under the 'Reporting communications' sub-category and the Reports fall under the 'Administrative Instructions' sub-category." *Id*. In addition, "specific information contained within the ECs, Reports, and LHMs also fall under the functional category 'Evidentiary/Investigative Materials,' sub-category 'Information Concerning Physical and Documentary Evidence.'" *Id*.

The Reporting Communications sub-category will contain documents that include documents if they authorize "the FBI and/or other agencies to monitor the process of the investigation and to facilitate its conduct." *Id*., ¶ 5(A)(i). Also, ECs, LHMs and Reports contain information that places them within this sub-category because "the ECs contain case background information regarding victims, witnesses, and third-party information needed by another law enforcement agency to complete requested investigative activities in furtherance of ongoing investigations[;] [t]he Reports provide results of interviews by other law enforcement agencies as well as additional intelligence gathered because of the

request for assistance. LHMs request assistance from FBI law enforcement partners in the ongoing FBI investigation and contain detailed information about potential witnesses and victims to be interviewed; information about other evidence gathered and the source of that information; and the ties to the third party being interviewed, the subject, and the ongoing investigations." Exh. A, ¶ 5(A)(i).

The FBI cannot disclose Reports under this sub-category prematurely because they "would reveal the investigative steps taken in this ongoing investigation, the methods used to compile or solicit the information, and their effectiveness. Disclosure could reasonably be expected to tip off subjects to any perceived weaknesses in the investigation by providing an overall picture of the nature and scope of the non-public pending investigation. Moreover, disclosure of such information would tip off subjects of the other ongoing investigations, thereby providing valuable insight into ways to thwart ongoing investigative efforts." *Id.*, ¶ 5(A)(ii).

Documents that comprise "specific investigative procedures and strategies employed in this investigation, whether the information originated in communications from the DOJ, FBI, or other domestic or foreign law enforcement agencies" fall "into the Administrative Instructions sub-category.  Id. ¶ 5(B)(i), In addition, documents that "contain the results of interviews conducted by other law enforcement agencies at the request of the FBI" also fit within the same sub-category.  Thus, if Reports has information regarding Mr. Sanders or

other third-parties, they are placed in this sub-category.  *Id.*, ¶ 5(B)(i).

Accordingly, release of information contained in the ECs, LHMs and Reports would likely "reveal the investigative steps taken in this ongoing investigation, the methods used to compile or solicit the information, and their effectiveness. Disclosure could reasonably be expected to tip off subjects to any perceived weaknesses in the investigation by providing an overall picture of the nature and scope of the non-public pending investigation. Moreover, disclosure of such information would tip off subjects of the other ongoing investigations, thereby providing valuable insight into ways to thwart ongoing investigative efforts." *Id.*, ¶ (B)(ii).

Documents that contain information obtained "through searches, seizures, surveillance, victim/witness interviews, subpoenas, laboratory reports, and any other law enforcement/intelligence gathering activities," fall into the Information Concerning Physical and Documentary Evidence sub-category *Id.*, ¶ 5(C)(i).

Because the ECs, LHMs, and Reports at issue contain such information, they also fall within this sub-category.  *See id*. The "ECs and LHMs was provided to obtain the assistance of other law enforcement agencies for the purpose of identifying subjects and gathering information from requested interviews of victims and witnesses. The information within the Reports consists of responses (including findings and additional intelligence) provided by other law enforcement agencies after attempting or completing the requested interviews.  These Reports also contain additional evidentiary information in furtherance of the FBI's

investigation," and these Reports, therefore, fall under the same sub-category. *Id.*

The FBI cannot release these documents because the information they contain "would identify details regarding the FBI's investigative interests and could enable suspects to discern a 'road map' of the investigation." *Id.*, ¶ 5(C)(ii). Thus, premature disclosure of this information "would harm current investigations and jeopardize the investigation of the subjects. In addition, release of this material would also reveal the nature and scope of the investigation by revealing the investigative steps taken to obtain or solicit information from various sources, and any perceived weaknesses in the investigation." *Id.* This information would reasonably be expected to allow "the subjects of these investigations to anticipate and possibly alter or negate incriminating evidence used for prosecution." *Id.*

## V.    CONCLUSION

The FBI properly withheld the re-classified documents pursuant to FOIA Exemption 7(A) because premature disclosure of this information could reasonably be expected to allow subjects to interfere with ongoing law enforcement proceedings. Although the records were previously placed in the functional sub-category "Exchange of Information between Various Law Enforcement Agencies," they remain properly exempt from disclosure pursuant to FOIA Exemption (b)(7)(A) under the functional category "Administrative Materials" and its sub-categories and functional category "Evidentiary/Investigative Materials" and its sub-category because the FBI has determined that premature disclosure could reasonably be expected to interfere with pending or prospective enforcement

proceedings.  *See id.*, ¶ 6.  "After extensive review of the documents at issue, the

FBI determined that there is no further non-exempt information that can be

reasonably segregated and released without revealing FOIA exempt information."

*Id.*

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    *s/E. Kenneth Stegeby*
E. KENNETH STEGEBY
Assistant United States Attorney
United States Attorney's Office
Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Tel.: 813.274.6000
Fax: 813.274.6198
E-mail: Kenneth.Stegeby@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court by using the CM/ECF system, which will send notice of electronically to:

Mark S. Zaid, Esq.
Joshua Michael Entin, Esq.
*Plaintiff's Counsel*

*s/E. Kenneth Stegeby*
E. KENNETH STEGEBY
Assistant United States Attorney